# REQUIRED STATEMENT
## TO ACCOMPANY MOTIONS FOR RELIEF FROM STAY

All Cases: Debtor(s) __Sahaladien Soldana__   Case No. __17-25995__   Chapter __13__

All Cases: Moving Creditor __Park Avenue of Aurora Condominium Association__   Date Case Filed __08/30/2017__

Nature of Relief Sought: ☑ Lift Stay   ☐ Annul Stay   ☐ Other (describe) _____

Chapter 13: Date of Confirmation Hearing _____ or Date Plan Confirmed __12/15/2017__

Chapter 7: ☐ No-Asset Report Filed on _____
☐ No-Asset Report not Filed, Date of Creditors Meeting _____

1. Collateral
   a. ☑ Home
   b. ☐ Car   Year, Make, and Model _____
   c. ☐ Other (describe) _____

2. Balance Owed as of Petition Date   $ __Unknown__
   Total of all other Liens against Collateral $ __Unknown__

3. In chapter 13 cases, if a post-petition default is asserted in the motion, attach a payment history listing the amounts and dates of all payments received from the debtor(s) post-petition.

4. Estimated Value of Collateral (must be supplied in *all* cases)   $ __185,000.00__

5. Default
   a. ☐ Pre-Petition Default
      Number of months ____   Amount $ _____

   b. ☑ Post-Petition Default
      i. ☑ On direct payments to the moving creditor
         Number of months ____   Amount $ __954.54__   + accruing assessments, charges, attorney's fees, and costs.
      ii. ☐ On payments to the Standing Chapter 13 Trustee
         Number of months ____   Amount $ _____

6. Other Allegations
   a. ☑ Lack of Adequate Protection § 362(d)(1)
      i. ☐ No insurance
      ii. ☐ Taxes unpaid   Amount $ _____
      iii. ☐ Rapidly depreciating asset
      iv. ☑ Other (describe) __Accruing lien for unpaid association assessments__

   b. ☑ No Equity and not Necessary for an Effective Reorganization § 362(d)(2)

   c. ☑ Other "Cause" § 362(d)(1)
      i. ☐ Bad Faith (describe) _____
      ii. ☐ Multiple Filings
      iii. ☑ Other (describe) __Default under Movant's Declarations__

   d. Debtor's Statement of Intention regarding the Collateral
      i. ☐ Reaffirm   ii. ☐ Redeem   iii. ☐ Surrender   iv. ☑ No Statement of Intention Filed

Date: __September 28, 2018__   _____
                                Counsel for Movant

(Rev. 12/21/09)

## Account History Report
## Park Avenue of Aurora Condo.

**S. & S. Soldana (Post)**                                    00226-4365

| | | |
|---|---|---|
| Community Address: | 2367 Stoughton Circle<br>Aurora, IL 60502 | Date Settled: Wed Aug 30, 2017<br>Unit Type:  01 - Albany |
| Mailing Address: | 2367 Stoughton Circle<br>Aurora, IL 60502 | Last payment date:  Fri Apr 13, 2018<br>Last payment amount:  653.00<br>Current balance:  814.54 |

| Trans Date | Transaction | Charges | Payments | Balance | Date Billed | Reference | Comments |
|---|---|---|---|---|---|---|---|
| | Opening Balance | | | 0.00 | | | |
| 10/03/2017 | Late Fee | 15.00 | | 15.00 | | Late fee | Late fee : 09/06/17 |
| 10/03/2017 | Lockbox Payment | | -150.00 | -135.00 | | 6143942 | Lock Box: 10/03/2017 |
| 10/03/2017 | Monthly Assessment | 134.76 | | -0.24 | | Monthly Charges | 09/01/17 Mv fr 156-6048 |
| 10/03/2017 | Monthly Assessment | 134.76 | | 134.52 | | Monthly Charges | 10/01/17 Mv fr 156-6048 |
| 11/01/2017 | Monthly Assessment | 134.76 | | 269.28 | | Monthly Charges | Recurring Charges: 11/01/2017 |
| 11/06/2017 | Late Fee | 15.00 | | 284.28 | | Late Fee | Late Fee: 11/06/2017 |
| 11/16/2017 | Check | | -150.00 | 134.28 | | 532364599 | SOLDANA |
| 12/01/2017 | Monthly Assessment | 134.76 | | 269.04 | | Monthly Charges | Recurring Charges: 12/01/2017 |
| 12/06/2017 | Late Fee | 15.00 | | 284.04 | | Late Fee | Late Fee: 12/06/2017 |
| 12/11/2017 | Check | | -110.00 | 174.04 | | 536619566 | SOLDANA |
| 01/01/2018 | Monthly Assessment | 141.50 | | 315.54 | | Monthly Charges | Recurring Charges: 01/01/2018 |
| 01/06/2018 | Late Fee | 15.00 | | 330.54 | | Late Fee | Late Fee: 01/06/2018 |
| 01/18/2018 | Misapplied Payment | | -160.00 | 170.54 | | LB 2980443 B351( | 9/11/17 Moved From 156-6048 |
| 01/19/2018 | Check | | -150.00 | 20.54 | | 541820743 | Soldana |
| 02/01/2018 | Monthly Assessment | 141.50 | | 162.04 | | Monthly Charges | Recurring Charges: 02/01/2018 |
| 02/06/2018 | Late Fee | 15.00 | | 177.04 | | Late Fee | Late Fee: 02/06/2018 |
| 03/01/2018 | Monthly Assessment | 141.50 | | 318.54 | | Monthly Charges | Recurring Charges: 03/01/2018 |
| 03/06/2018 | Late Fee | 15.00 | | 333.54 | | Late Fee | Late Fee: 03/06/2018 |
| 04/01/2018 | Monthly Assessment | 141.50 | | 475.04 | | Monthly Charges | Recurring Charges: 04/01/2018 |
| 04/06/2018 | Late Fee | 15.00 | | 490.04 | | Late Fee | Late Fee: 04/06/2018 |
| 04/13/2018 | Lockbox Payment | | -653.00 | -162.96 | | 7321587 | Lock Box: 04/13/2018 |
| 05/01/2018 | Monthly Assessment | 141.50 | | -21.46 | | Monthly Charges | Recurring Charges: 05/01/2018 |
| 06/01/2018 | Monthly Assessment | 141.50 | | 120.04 | | Monthly Charges | Recurring Charges: 06/01/2018 |
| 06/06/2018 | Late Fee | 15.00 | | 135.04 | | Late Fee | Late Fee: 06/06/2018 |
| 07/01/2018 | Monthly Assessment | 141.50 | | 276.54 | | Monthly Charges | Recurring Charges: 07/01/2018 |
| 07/06/2018 | Late Fee | 15.00 | | 291.54 | | Late Fee | Late Fee: 07/06/2018 |
| 07/16/2018 | Demand Letter Charge | 35.00 | | 326.54 | | Demand Letter | Processing Fee |
| 08/01/2018 | Monthly Assessment | 141.50 | | 468.04 | | Monthly Charges | Recurring Charges: 08/01/2018 |
| 08/06/2018 | Late Fee | 15.00 | | 483.04 | | Late Fee | Late Fee: 08/06/2018 |
| 09/01/2018 | Monthly Assessment | 141.50 | | 624.54 | | Monthly Charges | Recurring Charges: 09/01/2018 |
| 09/06/2018 | Late Fee | 15.00 | | 639.54 | | Late Fee | Late Fee: 09/06/2018 |
| 09/13/2018 | Delinq Proc Fee - Assn | 175.00 | | 814.54 | | Attorney | Processing Fee |

*Handwritten annotations:*

9-24-18 BK Legal fee 175.00    989.54    Letter
9-28-18 BK Legal fee 781.00    1,770.54    Lift Stay
— Demand fee         -  35.00
  (7-16-18)
                    1,735.54

This Instrument Was Prepared By:
Pasquinelli, Inc.

AFTER RECORDING, MAIL TO:
Maria L. Pasquinelli
535 Plainfield Road, Suite 1E
Willowbrook, IL 60527

PIN:   07-19-302-001; 07-19-302-002
07-19-302-003; 07-19-401-001
all underlying

Address: Parcel located East of New York
Street, South of Kautz Road, Aurora, IL 60504



J.P. "RICK" CARNEY
DUPAGE COUNTY RECORDER
SEP.20,2002         3:33 PM
PLAT                07-19-302-001
060 PAGES   R2002-243624

# DECLARATION OF CONDOMINIUM OWNERSHIP

and of

## EASEMENTS, COVENANTS AND RESTRICTIONS

FOR

## *PARK AVENUE OF AURORA CONDOMINIUM*

THIS DECLARATION made and entered into by Pasquinelli, Inc., an Illinois corporation, hereinafter referred to as the "Developer".

WITNESSETH:

WHEREAS, the Developer is the legal title holder to that certain real estate located in the County of DuPage and State of Illinois and described more fully on Exhibit D attached hereto and hereby made a part hereof (herein referred to as the "Parcel"); and

WHEREAS, the Developer intends to and does hereby submit the above-described Parcel or real estate together with all Buildings, structures, improvements and other permanent fixtures of whatsoever kind now or hereafter constructed thereon, and all rights and privileges belonging to or anywise pertaining

Final Declaration 09.05.02.doc

PAGE 1

Case 17-25995    Doc 40-2    Filed 09/28/18    Entered 09/28/18 14:04:55    Desc
Statement Accompanying Relief From Stay    Page 4 of 7

UNOFFICIAL COPY

## ARTICLE IV

### Assessments

SECTION 1. <u>Annual Budget</u>.    The Board shall cause to be prepared an estimated annual budget for each fiscal year of the Association. Such budget shall take into account the estimated Common Expenses and cash requirements for the year, including but not limited to salaries, wages, payroll taxes, legal and accounting fees, working capital fund, supplies, materials, parts, services, maintenance, repairs, replacements, landscaping, insurance, fuel, power, real estate taxes, and all other Common Expenses. To the extent that the assessments and other cash income collected from the Unit Owners during the preceding year shall be more or less than the expenditures for such preceding year, the surplus or deficit, as the case may be, shall also be taken into account. The annual budget shall also take into account the estimated net available cash income for the year from the lease, operation or use of the Common Elements. The annual budget shall provide for a reserve for contingencies for the year and a reserve for capital expenditures, in reasonable amounts as determined by the Board. The reserve for capital expenditures shall be held in a segregated account in the name of the Association.

SECTION 2. <u>Assessments</u>. The estimated annual budget for each fiscal year shall be approved by the Board, and copies of the proposed annual budget, together with an indication of which portions are intended for capital expenditures or repairs or payment of real estate taxes, shall be furnished by the Board to each Unit Owner, not later than thirty (30) days prior to the adoption thereof. If an adopted budget requires assessment against the Unit Owners in any fiscal or calendar year exceeding 115% of the assessments for the preceding year, the Board, upon written petition by Unit Owners with 20 percent (20%) of the votes of the Association filed with fourteen (14) days of the Board action, shall call a meeting of the Unit Owners within thirty (30) days of the date of filing of the petition to consider the budget. Unless a majority of the votes of the Unit Owners are cast at a meeting to reject the budget, it is ratified, whether or not a quorum is present. In determining whether assessments exceed 115% of similar assessments in prior years, any authorized provisions for reasonable reserves for repair or replacement of the condominium property, and anticipated expenses by the Association which are not anticipated to be incurred on a regular or annual basis, shall be excluded from the computation. On or before the first day of the first month and of each succeeding month of the year covered by the annual budget, each Unit Owner shall pay, as his respective monthly assessment for the Common Expenses, one twelfth (1/12) of his proportionate share of the Common Expenses for such year as shown by the annual budget. Unless otherwise provided in the Declaration, such proportionate share for each Unit Owner shall be in accordance with his respective ownership interest in the Common Elements as set forth in Exhibit B of the Declaration. In the event that the Board shall not approve an estimated annual budget or shall fail to determine new monthly assessments for any year, or shall be delayed in doing so, each Unit Owner shall continue to pay each month the amount of his respective monthly assessment as last determined. Each Unit Owner shall pay his monthly assessment on or before the first day of each month to the Managing Agent or as may be otherwise directed by the Board. A late fee of $15.00, or some other amount as determined by the Board, shall be assessed on the 6th day of the month for all Unit Owners who have not paid their monthly assessment for any given month. No Unit Owner shall be relieved of his obligation to pay his assessment by abandoning or not using his Unit, the Common Elements, or the Limited Elements. Each Unit Owner shall receive notice, in the same manner as is provided herein for membership meetings, of any meeting of the Board concerning the adoption of the proposed annual budget or any increase or establishment of an assessment.

Pasquinelli/HOA/Park Avenue/Final Declaration 09.05.02    46

SECTION 3.  Partial Year or Month. For the first fiscal year, the annual budget shall be as approved by the First Board. If such first fiscal year, or any succeeding fiscal year, shall be less than a full year, then the monthly assessments for each Unit Owner shall be proportionate to the number of months and days in such period covered by such budget. Commencing with the date of occupancy of his Unit, each Unit Owner shall pay his assessment for the following month or fraction of a month, which assessment shall be in proportion to his respective ownership interest in the Common Elements and the number of months and days remaining of the period covered by the current annual budget, and which assessment shall be as computed by the Board.

SECTION 4.  Annual Report. Within ninety (90) days after the end of each fiscal year covered by an annual budget, or as soon thereafter as shall be practicable, the Board shall cause to be furnished to each Unit Owner a statement for such year so ended, showing an itemized accounting of the Common Expenses for the preceding year actually incurred and paid including capital expenditures or repairs and real estate taxes, together with an indication of which portions were for capital expenditures or payment of real estate taxes and with a tabulation of the amounts collected pursuant to the budget or assessments, and showing the net excess or deficit of income over expenditures plus reserves, and such other information as the Board may deem desirable.

SECTION 5.  Supplemental Budget.  In the event that during the course of a year, it shall appear to the Board that the monthly assessments, determined in accordance with the estimated annual budget for such year, are insufficient or inadequate to cover the estimated Common Expenses for the remainder of such year, then the Board shall prepare and approve a supplemental budget covering the estimated deficiency for the remainder of such year, copies of which supplemental budget shall be furnished to each Unit Owner, and thereupon a supplemental assessment shall be made to each Unit Owner for his proportionate share of such supplemental budget.

SECTION 6.  Expenditures.  Except with respect to such expenditures which (i) are specifically authorized by the Declaration or Bylaws, or (ii) are required by law, or (iii) can be paid from the proceeds of insurance received by or for the account of the Board, or (iv) are immediately necessary for the emergency repair, preservation, safety or protection of the Unit Owners or the Common Elements, the Board shall have no authority to approve or authorize any structural alterations, capital additions to, or capital improvements of the Common Elements requiring an expenditure in excess of the Twenty Thousand Dollars ($20,000.00) or any contract for a term of more than four (4) years, unless such expenditure or contract shall have been approved by two-thirds (2/3) of the total votes cast at a meeting called for that purpose.

Any non-recurring Common Expense, any Common Expense not set forth in the budget as adopted, and any increase in assessment over the amount adopted shall be separately assessed against all Unit Owners. Any such separate assessment shall be subject to the approval by the affirmative votes of at least two-thirds (2/3) of the Unit Owners voting at a meeting of Unit Owners duly called for the purpose of approving the assessment if it involves proposed expenditures resulting in a total payment assessed to a Unit equal to the greater of five (5) times the Unit's most recent Common Expense assessment calculated on a monthly basis or $300.00.

SECTION 7. <u>Lien</u>. It shall be the duty of every Unit Owner to pay his proportionate share of the Common Expenses, as provided in the Declaration, and as assessed in the manner herein provided.

If any Unit Owner shall fail or refuse to make any such payment of the Common Expenses, when due, a late fee of $15.00 or some similar fee as determined by the Board shall be assessed to the Unit Owner. The amount thereof together with interest thereon at the rate of 8% per annum or such greater percentage as may then be permitted under the laws of the State of Illinois after said Common Expenses become due and payable, late charges, reasonable attorneys' fees and cost of collection or amount of any unpaid fine shall constitute a lien, as provided in the Act, enforceable by the Board, on the interest of such Unit Owner in the Property, provided, however, that such lien shall be subordinate to the lien of a prior recorded first mortgage held by an insurance company, bank, savings and loan, mortgage broker and FNMA or other lending institution on the interest of such Unit Owner, except for the amount of the proportionate share of Common Expenses which are due and payable from and after the date on which such mortgage owner or holder either takes possession of the Unit, accepts a conveyance of any interest therein (other than as security), or accepts a deed in lieu of foreclosure for its mortgage and causes a receiver to be appointed, in suit to foreclose its mortgage, all as provided in the Declaration. The provisions of this paragraph of this Section 7 shall not be amended, changed, modified or rescinded in any way without the prior written consent of all such lien holders of record. The Association or its successors and assigns, or the Board or its agents, shall have the right to maintain a suit to foreclose any such lien, and there shall be added to the amount due the costs of said suit and other fees and expenses, together with legal interest and reasonable attorneys' fees to be fixed by the Court. Furthermore, if any Unit Owner shall fail or refuse to pay when due his proportionate share of the Common Expenses and such Unit Owner withholds possession of his Unit after demand by the Board or the Association in writing setting forth the amount claimed, the Board or the Association shall have the right to possession of such Unit. The Board and the Association shall have the authority to exercise and enforce any and all rights and remedies as provided for in the Condominium Property Act, the Forcible Entry and Detainer Act, the Declaration or these Bylaws, or as are otherwise available at law or in equity, for the collection of all unpaid assessments.

SECTION 8. <u>Records and Statement of Account</u>. The Board shall cause to be kept detailed and accurate records in chronological order of the receipts and expenditures affecting the Common Elements and Limited Common Elements, specifying and itemizing the Common Expenses incurred. Payment vouchers may be approved in such manner as the Board may determine.

The Board shall, upon receipt of ten (10) days written notice to it or the Association and upon payments of a reasonable fee, furnish to any Unit Owner a statement of his account setting forth the amount of any unpaid assessments or other charges due and owing from such Owner.

SECTION 9. <u>Discharge of Liens</u>. The Board may cause the Association to discharge any mechanic's lien or other encumbrance, which in the opinion of the Board may constitute a lien against the Property or the Common Elements, rather than a lien against only a particular Unit Ownership. When less than all the Unit Owners are responsible for the existence of any such lien, the Unit Owners responsible shall be jointly and severally liable for the amount necessary to discharge the same and for all costs and expenses, including attorneys' fees, incurred by reason of such lien.

SECTION 10. <u>Holding of Funds</u>. All funds collected hereunder shall be held and expended for the purposes designated herein, and (except for such special assessments as may be levied hereunder against less than all the Unit Owners and for such adjustments as may be required to reflect delinquent or prepaid assessments) shall be deemed to be held for the benefit, use and account of all the Unit Owners in the percentages set forth in Exhibit "B".

SECTION 11. <u>Forbearance</u>. The Association shall have no authority to forbear the payment of assessments by any Unit Owner.

## ARTICLE V

### Use and Occupancy Restrictions

SECTION 1. <u>General</u>. No unlawful, noxious or offensive activities shall be carried on in any Unit or elsewhere on the Property, nor shall anything be done therein or thereon which shall constitute a nuisance or which shall in the judgment of the Board cause unreasonable noise or disturbance to others.

Each Unit Owner shall maintain his Unit in good condition and in good order and repair, at his own expense, and shall not do or allow anything to be done in his Unit which may increase the cost or cause the cancellation of insurance on other Units or on the Common Elements. No Unit Owner shall display, hang, store or use any clothing, sheets, blankets or other article outside his Unit, or which may be visible from the outside of his Unit (other than draperies, curtains, or shades of a customary nature and appearance, subject to the rules and regulations of the Board), or paint or decorate or adorn the outside of his Unit, or install outside his Unit any canopy or awning, or outside radio or television antenna, or other equipment, fixtures or items of any kind, without the prior written permission of the Board or the written permission of the Managing Agent, acting in accord with the Board's direction. No owner of a Unit shall display, hang, store or use any sign outside his Unit, in a hallway or elsewhere, or which may be visible from the outside of his Unit without the prior written permission of the Board or the written permission of the Managing Agent, acting in accord with the Board's direction.

SECTION 2. <u>Animals</u>. No animals shall be raised, bred or kept in any Unit, except for dogs, household cats and small birds owned by Unit Owner, provided said pet is not kept for any commercial purposes, and provided that said pet shall be kept in strict accordance with the administrative rules and regulations relating to household pets from time to time adopted by the Board, and provided that said pet shall not in the judgment of the Board constitute a nuisance to others. The Board, in its discretion, may adopt rules or regulations prohibiting the keeping of household pets altogether, or limiting the permissible number or kind of animals.

SECTION 3. <u>Trash</u>. Trash, garbage and other waste shall be kept only in sanitary containers, and shall be disposed of in a clean sanitary manner as prescribed from time to time in rules and regulations of the Board.

SECTION 4. <u>Use by Developer</u>. During the period of development, construction and sale by the Developer of any Units, the Developer and its beneficiary and said beneficiary's agents, employees, contractors and subcontractors, and their respective agents and employees, shall be entitled to access, ingress to and egress from the Buildings and Property as may be required for purposes of said

Pasquinelli/HOA/Park Avenue/Final Declaration 09.05.02    49